UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| RANDY E. WALKER, | ) |
| | ) |
|  Plaintiff, | ) |
| | ) |
|   vs. | ) Cause No. 2:15-cv-79-WTL-DKL |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
|  Defendant. | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Randy E. Walker requests judicial review of the partially favorable decision by Defendant Carolyn Colvin, Acting Commissioner of the Social Security Administration ("Commissioner"), regarding his application for a period of disability and Disability Insurance Benefits ("DIB") under the Social Security Act ("the Act"). The Court rules as follows.

## I. PROCEDURAL HISTORY

Walker filed his application for a period of disability and DIB on January 24, 2012, alleging disability beginning August 14, 2011, due to extensive injuries he sustained in a motorcycle accident. His application was denied initially and upon reconsideration, whereupon he requested and was granted a hearing before an administrative law judge ("ALJ"). Walker was represented by counsel at the hearing, which was held on October 22, 2013, before ALJ Lee Lewin. Walker, a medical expert, and a vocational expert testified at the hearing. Thereafter, on November 18, 2013, the ALJ rendered her decision in which she concluded that Walker had been disabled as defined by the Act for a closed period from August 14, 2011, to August 28, 2012, but that he was not disabled thereafter. After the Appeals Council denied Walker's request for review of the ALJ's decision, he filed this timely action for judicial review.

## II. EVIDENCE OF RECORD

The relevant evidence of record is amply set forth in the parties' briefs and the ALJ's decision and need not be repeated here.

## III. APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity he is not disabled, despite his medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), he is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. This Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate her analysis of the evidence in her decision; while she "is not required to address every piece of evidence or testimony," she must "provide some glimpse into her reasoning . . . [and] build an accurate and logical bridge from the evidence to her conclusion." *Dixon*, 270 F.3d at 1176.

## IV. THE ALJ'S DECISION

The ALJ found at step one that Walker had not engaged in substantial gainful activity since his alleged onset date of August 14, 2011. At steps two and three, the ALJ found that Walker had the severe impairments of status post multiple fractures and surgeries and chronic pain syndrome, and that his impairments medically equaled Listing 1.06B for the period of August 14, 2011, through August 28, 2012, but not thereafter. At step four, the ALJ concluded that beginning on August 29, 2012, Walker had the same severe impairments, but that he had experienced medical improvement such that he no longer met or equaled any listing and he had

> the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that he can stand one to two hours at a time and sit one to one and a half hours at a time. He can frequently balance, occasionally kneel, stoop, crouch, crawl, and climb ramps and stairs but he can never climb ladders, ropes or scaffolds. He can frequently handle with the left upper extremity. He should

3

> avoid concentrated exposure to wetness and hazards including dangerous moving machinery, unprotected heights and slippery wet or uneven terrain.

Record at 23-24. Given this RFC, the ALJ determined that Walker was unable to perform any of his past relevant work. At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Walker could perform, including small parts assembler, labeler, and mail clerk. Accordingly, the ALJ concluded that Walker was not disabled as defined by the Act as of August 29, 2012.

## V. DISCUSSION

Walker argues that the ALJ's determination that his condition improved as of August 29, 2012, such that he was no longer disabled as defined by the Act is erroneous in several respects. Walker testified that he had been unable to work since his motorcycle accident and remained so at the time of the hearing due to pain, lack of stamina, and decreased strength and mobility due to the residual effects of the multiple fractures he suffered in the accident and the chronic pain syndrome he subsequently developed. He testified that he could stand for "an hour, maybe two if I push it" and that he could sit "[i]n an upright chair, probably an hour, maybe an hour and a half if I push it." He explained that after sitting in church for an hour and then "standing and socializing" after the service each week, "I'm ready to go home and get in my recliner, and kick my feet up." Record at 49. He testified that he was easily fatigued and would become tired walking just four blocks. He was taking hydrocodone about every five hours and morphine twice a day, which he testified helped with his pain but made him drowsy. He further recounted that he experienced back pain after standing and holding his 22-pound granddaughter for about ten minutes such that he had to sit down with her.

Walker's testimony, if fully credited, demonstrates that he does not retain the RFC to work at the level found by the ALJ. Walker argues that the ALJ's determination that he was not entirely credible is not properly supported. The Court agrees.

As the ALJ correctly acknowledged, with regard to subjective symptoms such as pain and fatigue, once she determined that Walker had medically determinable impairments that were reasonably expected to produce the symptoms, then the ALJ was required under the policy in place at the time[1] to evaluate the credibility of the claimant's testimony regarding the extent of those symptoms. "In determining credibility an ALJ must consider several factors, including the claimant's daily activities, his level of pain or symptoms, aggravating factors, medication, treatment, and limitations," *see* 20 C.F.R. § 404.1529(c); S.S.R. 96-7p, and justify the finding with specific reasons. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). The regulations further provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 404.1529(c)(2). "The determination of credibility must contain specific reasons for the credibility finding" and "must be supported by the evidence and must be specific enough to enable the claimant and a reviewing body to understand the reasoning." *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008) (citing *Arnold v. Barnhart*, 473 F.3d 816, 822 (7th Cir. 2007)).

As noted, Walker testified that he had disabling symptoms from his impairments, as well as drowsiness caused by his medication. The ALJ explained that she found Walker's "allegations are not fully credible beginning August 29, 2012," and continued:

---

[1] Subsequent to the ALJ's decision, the Commissioner superseded SSR 96-7p to eliminate reference to the claimant's "credibility." SSR 16-p (March 16, 2016). The required analysis otherwise remains substantially the same under the new ruling.

5

> In reaching my findings, I have considered a variety of factors. I note my residual functional capacity finding is consistent with, or more generous than, the medical opinions of record by the State agency consultants and Dr. McKenna. The record does not contain any medical opinions from treating or examining doctors imposing work-related limitations greater than as described in my residual functional capacity for the claimant.

Record at 25. The problem with this reasoning is that the state agency consultants both opined that Walker was not disabled as of March 2012, when they reviewed his medical records. The ALJ disagreed with this conclusion, finding that he was disabled until August 28, 2012. Because the state agency consultants' opinions were not credited by the ALJ, and in any event they do not address—and could not have addressed—whether Walker's condition had improved as of August 29, 2012, they cannot be used to support a finding regarding Walker's subjective symptoms after that date. As for Dr. McKenna, his testimony is exceptionally confusing and suggests that he was not sufficiently familiar with the medical evidence to render a well-supported opinion. Indeed, the only explanation he gives for why he believes Walker had improved as of August 29, 2012, such that he was no longer disabled under the Act is that he was walking without a limp, or perhaps with a minimal limp. *Id.* at 91. This explains why he believes Walker no longer met or equaled Listing 1.06 at that point, but Dr. McKenna does not address, or even mention, any of Walker's other symptoms as of that date, address the impairment of chronic pain syndrome and its effect on Walker's ability to work, or explain why he believes Walker was able to sustain full-time work as of August 29, 2012. Therefore neither his opinion nor those of the state agency consultants provide any reasoned support for rejecting Walker's testimony about his subjective symptoms.

The ALJ next opines that Walker "has described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. [Walker] testified he goes fishing, recently went overnight camping, goes to church weekly and controls

6

the soundboard, washes dishes, does the laundry, vacuums, makes the bed, takes care of two dogs, and mows the acre and a half lawn on a riding mower." *Id.* at 25. However, Walker's testimony actually indicates that he has to limit these activities because of his pain and lack of stamina. He had only gone fishing "[m]aybe a half a dozen" times since his accident, and could only fish for a "couple of hours" before he had to leave because of pain. He did go camping once, but had to cut his trip short because he was too uncomfortable. He feeds his dog and walks the smaller of the two, but does not bathe them or walk the larger dog due to his impairments. As noted above, he attends church and works the soundboard during services, but he has to change positions while doing so and then needs to go home and rest in his recliner afterwards. He has to take a break in the middle of mowing the lawn because of the pain he experiences on the riding mower.

  The Seventh Circuit has made clear that the ability to perform minimal household chores and engage in periodic social activities does not by itself equate to residual functional capacity to work in the national economy. *See, e.g.*, *Engstrand v. Colvin*, 788 F.3d 655, 661 (7th Cir. 2015) ("working sporadically or performing household chores are [sic] not inconsistent with being unable to engage in substantial gainful activity"); *accord Beardsley v. Colvin*, 758 F.3d 834, 838 (7th Cir. 2014); *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005); *Carradine v. Barnhart*, 360 F.3d 751 (7th Cir. 2004). This is especially so when the evidence demonstrates that the claimant is able to complete those tasks only with great strain. *See Beardsley*, 758 F.3d at 838; *Craft*, 539 F.3d at 680. The activity level described by Walker is simply not inconsistent with his testimony that he would be unable to work full-time due to pain and lack of stamina.

  Next, the ALJ stated:

The claimant further testified that pain medications help relieve the pain and that physical therapy helped the functioning of the right wrist and left elbow, although

7

> he had to stop because he lost Medicaid insurance. However, the claimant also stopped home self-exercise and then reported bilateral knee pain and started using a cane again a couple times a day for the past two months. This indicates the claimant is not fully compliant with doctor recommendations. The claimant acknowledged he has not been prescribed treatment for the knee pain, he has not seen a specialist and that starting November 2, 2013, his Medicaid is reinstated so he will be able to resume physical therapy. The claimant further testified his right wrist has full range of motion with no limitation of use. I find that the claimant's allegations are not fully credible beginning August 29, 2012.

Record at 25. It is not entirely clear to the Court what the ALJ is saying in this paragraph. How is using an unprescribed cane and not seeking medical care during a period in which you have no health insurance indicative of credibility? Further, Walker did not testify that he had full range of motion in his wrist; in fact, when asked by the ALJ about how his right wrist limits him, he testified that he had to hold things differently, "like when I'm doing dishes it's hard for me to like stick my arm up in the cabinet to – to lay something flat down because my wrist don't turn to the outside, to turn my wrist out." *Id.* at 50. Even if he had so testified, it is not clear how the fact of having full range of motion in his right wrist would make his testimony about the pain and fatigue he experiences less credible.

The fact that Walker admitted to stopping his home exercises could be a relevant consideration in assessing his credibility, as an "ALJ may deem an individual's statements less credible if medical reports or records show that the individual is not following the treatment as prescribed." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (citing SSR 96–7p and *Craft,* 539 F.3d at 679).

> However, such evidence should not negatively affect an individual's credibility if there are good reasons for the failure to complete the plan. Therefore, an ALJ may need to question the individual at the administrative proceeding to determine whether there are good reasons the individual did not seek medical treatment or fully comply with prescribed treatment.

8

*Id.* Here, the ALJ asked Walker if he had "kept up with home exercises" for his right wrist and his left elbow after he could no longer afford physical therapy, and Walker replied "I did it for a little while, but then I just kind of got away from it. It didn't seem like it was really – it was hard for me to stay motivated and --." Record at 57. The ALJ then moved on to another topic. This scant testimony was not sufficient to satisfy the ALJ's burden of determining whether Walker had a good reason for discontinuing his home exercises. *Cf. Murphy*, 759 F.3d at 816 ("[T]he ALJ did not ask Murphy why she did not attend all of her physical therapy sessions, or why she did not comply with her home exercise program. There may be a reasonable explanation behind Murphy's actions, such as she may not have been able to afford the treatment, further treatment would have been ineffective, or the treatment created intolerable side effects.").

Because the ALJ failed adequately to support her credibility determination, remand is necessary. On remand, the ALJ also shall clarify what Walker's treating physician, Dr. Kaehr, meant when he opined that Walker could not perform "manual labor," as that term could reasonably be interpreted as including anything more than sedentary work, although the ALJ apparently assumed otherwise. The ALJ also shall reevaluate her consideration of the finding of disability by the state Medicaid Agency, as the ALJ noted only that such a determination is not binding on the Commissioner, but did not explain what weight, if any, she gave to it and why. *Cf. Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015) (finding the ALJ's "failure to analyze and weigh the Veteran Administration's determination that the applicant is totally disabled" was an "oversight" that should be addressed on remand).

## VI. CONCLUSION

For the reasons set forth above, the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further proceedings consistent with this Entry.

SO ORDERED: 9/12/16

_William T Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.